IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 14-4066-02-CR-C-BCW |
| | ) | |
| SARAH MARIE DUNCAN, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Pending before the Court is defendant Sarah Marie Duncan's Motion to Quash Search Warrant and Suppress Evidence. (Doc. 55). Defendant alleges that the Postal Inspector who removed the parcel from the mail for further investigation lacked the reasonable suspicion necessary for such a detention. Further, Defendant alleges that the search warrant that was issued, allowing the parcel to be searched, was not supported by probable cause and thus the evidence obtained thereafter must be suppressed. The United States has filed suggestions in opposition of the motion. (Doc. 76). A hearing was held on October 5, 2015, and supplemental suggestions in support were filed by Defendant (doc. 82), to which the Government filed a response in opposition. (Doc. 83).

## BACKGROUND

Defendant has been charged in an 11 Count Indictment, in all Counts, excluding Count 9, involving a Conspiracy to use a Communications Facility to Distribute and Possess with Intent to Distribute Marijuana. (Doc. 1). As a part of the alleged criminal activity, Defendant and her co-conspirators used the mail to send marijuana, and the proceeds from its sales, back and forth from California to Columbia, Missouri and other locations. In regard to the instant motion, on or about December 11, 2013, Defendant's co-conspirators sent to Defendant a package containing $50,000 in U.S. currency, representing proceeds from previous sales of marijuana. The package, which was addressed, "Sarah Duncan, 134 Prague St, San Francisco, CA 94112," was sent via Express Mail. The package caught the attention of Postal Inspector Jason Chung because of certain characteristics known to him, in his training and experience, to indicate either controlled substances or money associated with the distribution of controlled substances were likely

contained within.[1]  Because of its suspicious nature, the package was removed from the mail and further investigated, including exposing the package to a certified narcotics canine and inquiring into both the sender and recipient addresses and those persons associated with the addresses. Ultimately the Postal Inspector applied for and received a search warrant, and upon execution, $50,000 in United States currency was found within the package.

## ANALYSIS

The Government, in its suggestions in opposition, argues that the initial detention of the package was appropriate because the Postal Inspector had reasonable suspicion that the package contained contraband. Further, the Government contends that probable cause existed, sufficient to obtain a search warrant, thus execution of the search warrant was proper.  As a result, the discovery of the evidence was proper and need not be suppressed as fruits of an unlawful search. Defendant, in her suggestions in support of her motion to quash the search warrant, and suppress evidence found upon execution, argues that the Postal Inspector did not have reasonable suspicion to support the initial seizure of the parcel.  Defendant further argues that the Postal Inspector lacked probable cause to support the search warrant because none of the evidence presented against Defendant, the initially observed anomalies of the package, the dog sniff, nor the address and criminal history checks, provided such suspicion.  Thus, Defendant contends, all evidence discovered subsequently resulted from an unlawful search of the package, requiring its suppression.

### A.  Initial Detention

The Fourth Amendment of the United States Constitution provides, among other things, that individuals shall not be subjected to unreasonable searches and seizures without probable cause. U.S. CONST. amend. IV.  Mere observation of the outside of a package and a brief handling of the package by an officer does not result in a package being "seized" under the Fourth Amendment. United States v. Demoss, 279 F.3d 632, 635-36 (8th Cir. 2002) ("Meyer held the package only briefly before he observed additional suspicious characteristics.  The

---

[1] The initial characteristics observed by the Postal Inspector indicating that the package contained contraband, which will be discussed more fully below, include: (1) Express Mail delivery with a tracking number; (2) Size of the package; (3) Contents of the mailing label, specifically, the omission of a sender or receiver telephone number, waiver of a signature on delivery, and a fictitious return address; (4) Very carefully packaged, including tape on all seams.

2

package was not 'seized' for Fourth Amendment purposes by Meyer's lifting it from the conveyor belt.") However, taking a package from the flow of the mail and holding it for a "canine sniff" does result in a Fourth Amendment seizure of the package. Id. at 636-37. Additionally, Eighth Circuit case law requires that, "[a] law enforcement officer must have reasonable suspicion that a piece of mail, or a package shipped via a commercial carrier, contains contraband to lawfully seize it for investigative purposes." United States v. Smith, 383 F.3d 700, 704 (8th Cir. 2004) (citing United States v. Johnson, 171 F.3d 601, 603 (8th Cir. 1999)). The reasonable suspicion must be based on articulable facts that the package contains contraband before law enforcement may detain the package for further investigation. United States v. Johnson, 171 F.3d 601, 603 (8th Cir. 1999) (internal citations omitted). When, however, reasonable suspicion, based on articulable facts, exists that a package contains contraband, no violation of the Fourth Amendment is present. United States v. Terriques, 319 F.3d 1051, 1056 (8th Cir. 2003) (internal citations omitted). Whether law enforcement maintain reasonable suspicion is examined under a "totality of the circumstances" approach. United States v. Morones, 355 F.3d 1108, 1112 (8th Cir. 2004).

Here, the Postal Inspector, Jason Chung, possessed reasonable suspicion based on articulable facts to lawfully detain the package for further investigative purposes, in compliance with the Fourth Amendment. Inspector Chung has been an investigator for more than ten years. During his time as a postal inspector he has attended various in-class training, as well as on-the-job experience and training for the detection and investigation of unlawful use of the United States Mail. While testifying at the hearing, Inspector Chung explained the reasons the package prompted him to believe that the package contained contraband.

First, he noted that the package was rather large and was sent via Express Mail, a more expensive mail service. Express Mail is a very reliable method of shipping packages because it assigns a tracking number to every package. This allows both the sender and the receiver to monitor the location and delivery of the package either by calling a number provided by the Postal Service or entering the tracking number on the Internet. Inspector Chung also explained that in his experience, persons involved in shipping contraband prefer to use United States Postal Service as opposed to a private carrier because the government is the service provider which carries with it a reasonable expectation of privacy. A search warrant is required to open a package shipped via United States Mail, unlike a private carrier. Additionally, Inspector Chung

3

noted that this was a large package for the Express Mail service, because Express Mail is more commonly used by businesses to ship flat parcels containing documents. Larger packages shipped via Express Mail automatically raise suspicion according to Inspector Chung.

Second, Inspector Chung testified regarding the manner in which the mailing was packaged. He stated that the mailing was very carefully packaged, and had tape on all of the seams of the box. In his experience, people attempting to use the mail to transport contraband will very carefully tape all the seams of the package to prevent odors from escaping. This is an attempt to avoid detection, including from narcotics dogs. The fact that this particular package was very carefully packaged, with tape on all seams, was suspicious to Inspector Chung, based on his experience and training.

The third characteristic that raised Inspector Chung's suspicion was the mailing label on the package. He observed that there was not a phone number listed for either the sender or the recipient of the package. This was relevant to him because larger packages, shipped using Express Mail, are expensive to ship. Here, the cost to ship this particular package was $71.70. To expend this much money to ship, and not provide a number in case the package was lost or misplaced, raised suspicion. He also explained that people using the mail for contraband sometimes omit a phone number in an attempt to avoid detection and remain anonymous. In addition, Inspector Chung noted that the waiver of signature upon delivery option on the mailing label was selected. He explained that obtaining a signature upon delivery is the default, and that someone has to physically check a box waiving signature upon delivery. When signature upon delivery is waived, it allows the package to be delivered at the recipient's residence without having any contact with the carrier. Inspector Chung explained that in his experience people shipping and receiving contraband in the mail waive signature on delivery because it helps avoid detection. Inspector Chung also explained that this was suspicious because San Francisco has a high rate of mail theft. Finally, choosing to waive a signature upon delivery for a package of this size, which is expensive to ship via Express Mail, is uncommon and raises suspicion.

Finally, the last characteristic, and most significant to Inspector Chung, was that the package appeared to have a fictitious return address. Inspector Chung testified at the hearing that following his observation of the above described characteristics of the package, he did a preliminary check on the return address listed on the mailing label and discovered that the address did not exist. Inspector Chung stated that people who are using the mail to transport

4

contraband typically supply false return addresses in an attempt to remain anonymous. Inspector Chung testified that he has never seen a package with a fictitious address that did not contain contraband. Following the observation of all of these anomalies, the package was detained for additional investigation.

Once the package was detained for further investigation, the Fourth Amendment was implicated. However, the Court finds that, based on the totality of circumstances, reasonable suspicion existed sufficient to justify the initial detention of the package for further investigation. All of these anomalies, taken individually, could be viewed innocently. However, when viewed under the totality of the circumstances standard, they clearly provided the Postal Inspector with reasonable suspicion to warrant the initial detention of the package. Consequently, the Court finds Defendant's assertion that the initial detention was improper, based a lack of reasonable suspicion, to be without merit.

### B. Drug Dog Alert

Defendant next argues that the subsequent examination and alert to the package by the trained narcotics dog did not support probable cause for the issuance of the search warrant. This argument is based largely on the testimony and suggestions of Defendant's expert witness, forensic chemist Dr. Warren James Woodford, who testified at the suppression hearing that it was his opinion that the narcotics dog alerted to the package because the money inside was contaminated with cocaine residue. The Court notes at the outset that even without the positive alert to the package by the narcotics dog, there is strong indicia that probable cause existed, sufficient to issue a warrant to search the package. However, the Court is also of the opinion that the dog sniff was proper, and the positive alert further bolstered the evidence to support the probable cause to issue the search warrant in this case.

As previously stated, the Fourth Amendment of the United States Constitution provides that people are to be free from unreasonable searches and seizures absent a search warrant, and such warrants shall not issue but upon probable cause. U.S. CONST. amend. IV. In United States v. Sundby, the Eighth Circuit held that "[p]robable cause to issue a search warrant exists when the supporting affidavit sets forth sufficient facts to lead a prudent person to believe that there is a fair probability that contraband or evidence of a crime will be found in a particular place." 186 F.3d 873, 875 (8th Cir. 1999) (internal citations omitted). Additionally, the Eighth Circuit has stated that a positive alert by a narcotics dog alone can be sufficient to provide the probable

5

cause required for a search warrant to issue. United States v. Lakoskey, 462 F.3d 965, 976 (8th Cir. 2004). Further, the United States Supreme Court has analyzed the utility of drug dog sniffs numerous times and has continued to remark favorably as to their usefulness during drug investigations.[2] There is clear precedent that a positive alert by a narcotics dog is sufficient to provide probable cause that contraband is present.

Defendant argues that a drug dog's alert to the presence of a controlled substance on United States currency does not constitute probable cause. Defendant's expert witness, Dr. Woodford, testified that 90% of all U.S. currency is contaminated with cocaine residue. He stated that this is due largely to machines in banks getting contaminated with cocaine residue and then spreading or passing the residue onto other bills. He further testified that it was his opinion, based entirely on statistics, that the narcotics dog in this case was alerting to the presence of cocaine residue on the currency within the package. Although the Court finds Dr. Woodford's testimony questionable, even if true, probable cause still existed to search the package.

Here, the Court is not persuaded by Defendant's argument that the dog sniff does not provide probable cause because he was alerting to cocaine residue on the currency. At the hearing, the Government called one of Defendant's co-conspirators to testify and he stated that he was the person who had packaged the money and while he was doing so he was smoking marijuana. Inspector Chung testified that he had worked with this particular narcotics dog and handler, both of whom are certified, previously, and it was his opinion that they are reliable. Further, there is clear established precedent that a dog sniff alone can provide probable cause to issue a search warrant. Therefore, the Court finds Defendant's argument that the dog sniff did not provide probable cause in this case to be meritless.

### C. Probable Cause to Issue Search Warrant

Defendant next argues that the search warrant in this case was issued without probable cause, thus invalidating the search warrant and subsequent search. In support of this position Defendant asserts that the affidavit supporting probable cause contained only the "conclusory and subjective opinions of Inspector Chung and is barren of facts that would lead a prudent person to believe that there is a fair probability that the Parcel contained evidence of a crime." (Doc. 56, at p. 9). In support of this contention, Defendant renews her earlier contentions that

---

[2] See Florida v. Jardines, 133 S.Ct. 1409 (2013); Florida v. Harris, 133 S.Ct. 1050 (2013); United States v. Caballes, 543 U.S. 405 (2005); United States v. Place, 462 U.S. 696 (1983);

the characteristics that Inspector Chung observed, prompting him to further investigate the package, could also be characteristics of innocent people shipping packages through the mail that did not contain contraband. Defendant again raises the argument that the dog sniff cannot provide probable cause because the dog was likely alerting to the presence of cocaine residue on the currency within the package. Finally, Defendant argues that the further investigation after the drug sniff, including the address verification and the criminal history check on the people associated with the address to which the package was being shipped, did not provide sufficient evidence to establish probable cause to believe the package contained contraband. In response, the Government argues that in this case there was ample evidence to support a finding of probable cause, and that a valid search warrant was issued. The Court agrees with the Government.

In order to establish probable cause to search a package within the stream of the United States Mail, the search warrant and accompanying affidavit must set forth "sufficient facts to lead a prudent person to believe that 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" United States v. Johnson, 64 F.3d 1120, 1126 (8th Cir. 1995) (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)). As was previously discussed, the Eighth Circuit has held that a positive alert by a narcotics dog can provide sufficient probable cause to issue a search warrant. United States v. Lakoskey, 462 F.3d 965, 976-78 (8th Cir. 2004). Probable cause is determined under a "totality of circumstances" test, wherein there must be a substantial basis for concluding that a search warrant would uncover evidence of wrongdoing. Illinois v. Gates, 462 U.S. 213, 236 (1983) (internal citations omitted).

Here, the Court finds that sufficient evidence existed to establish probable cause for the issuance of a search warrant and the execution of the warrant to search the package. As stated earlier, absent the dog sniff there was still sufficient evidence to establish probable cause. The dog sniff merely furthered the conclusion that probable cause existed. In support of this finding, the Court notes all of the characteristics of the package itself that were observed by Inspector Chung, and led to the package's initial detention for further investigation. The size of the package, the careful taping of all the seams, the fact that the mailing label waived a signature upon delivery and neither a sender nor recipient phone number was provided, and the use of the Express Mail service are all relevant factors in determining whether probable cause existed. Additionally, the Court notes that Inspector Chung testified that the most significant

7

characteristic of a package believed to contain contraband is the presence of a fictitious return address.[3]  Here, the Inspector did a preliminary address check on December 11, 2013, the day the package was first discovered, while he was on-site.  On December 12, 2013 Inspector Chung checked Accurint, an online law enforcement database, for the sender address, which revealed no record of the address.  The Inspector was asked on cross-examination why only the second check was put into the affidavit in support of the warrant and he said that describing both checks in the affidavit would merely repeat the same information and would be redundant.  The Inspector also stated that the first check for the address was part of his preliminary screening process and that the second search was the one that he generally noted in the affidavit.  Inspector Chung testified that he has never seen a package with a fictitious address that did not contain contraband.

Further, Inspector Chung also ran an Accurint database check of the recipient address and learned that Sarah Duncan was associated with the residence, along with two other people, Donna Duncan and Jamy Porter.  A criminal history report on Sarah Duncan revealed three arrests, including one relating to the possession of marijuana in 2005.  A criminal history report on Donna Duncan revealed an arrest for possession of marijuana in 1972 and a criminal history report of Jamy Porter revealed an arrest for possession of marijuana in 2012.  This information was present within the affidavit.

Under the totality of the circumstances, the Court finds that there were "sufficient facts to lead a prudent person to believe that 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" United States v. Johnson, 64 F.3d 1120, 1126 (8th Cir. 1995) (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)).  All of the characteristics that resulted in the initial detention, the verification of a fictitious return address, the criminal history of people associated with the recipient address, and the positive alert by the trained narcotics dog on the package sufficiently establish probable cause.  Consequently, the search warrant was lawfully obtained and executed.

Further, because this Court finds that in this case there was sufficient evidence to establish probable cause, and that the search warrant was lawfully issued, Defendant's argument that all evidence, information, and other fruits resulting from the search must be suppressed is

---

[3] In her pleadings, Defendant fails to mention the testimony of Postal Inspector Chung that the false address was the most significant factor in his determination that the package likely contained contraband.

8

without merit. While it is established law that evidence, and the fruits that result, which is illegally obtained cannot be used, such a rule is not applicable here. Wong Sun v. United States, 371 U.S. 471, 484 (1963). The exclusionary rule does not apply because there was sufficient evidence to establish probable cause, and the search warrant was lawfully issued. Thus, all evidence and information discovered subsequently was not the fruits of an illegal search, but rather validly obtained.

## CONCLUSION

For the reasons stated above, the Court concludes that Defendant's contentions regarding suppression of evidence in this case to be without merit, and her motion to suppress should be denied. The Postal Inspector had reasonable and articulable suspicion sufficient to justify the initial detention of the package for further investigation. Further, probable cause existed sufficient to support the issuance and execution of the search warrant in this case. Consequently, all the evidence obtained subsequently was lawfully discovered, and therefore need not be suppressed.

IT IS THEREFORE RECOMMENDED that Defendant's motion to quash the search warrant and suppress evidence discovered thereafter should be DENIED. (Doc. 55).

Counsel are reminded that they have fourteen days from the date of receipt of a copy of this Report and Recommendation within which to file and serve objections. A failure to file and serve exceptions by this date shall bar an attack on appeal of the factual findings in the Report and Recommendation which are accepted or adopted by the district judge, except on the grounds of plain error or manifest injustice.

Dated this 29th day of December, 2015, at Jefferson City, Missouri.

/s/ *Matt J. Whitworth*
MATT J. WHITWORTH
United States Magistrate Judge